Dear Ms. Adams and Mr. Mantzaris:
On behalf of the citizen volunteer who serves on these boards, you have asked for my opinion on substantially the following question:
Does service on the Orange County Code Enforcement Board, the Orange County Housing Finance Authority Board, or the City of Orlando Downtown Development Board constitute an office for purposes of the dual office-holding prohibition in Article II, section 5(a), Florida Constitution?
In sum:
Board members of the Orange County Code Enforcement Board, the Orange County Housing Finance Authority Board, and the City of Orlando Downtown Development Board are officers for purposes of Article II, section 5(a), Florida Constitution.
According to your letter, one person is currently a duly appointed member of the Orange County Code Enforcement Board, the Orange County Housing Authority Finance Board, and the City of Orlando Downtown Development Board. On behalf of this individual and as legal counsel to these boards, you have asked whether Florida's dual office-holding prohibition, contained in Article II, section 5(a), Florida Constitution, would prohibit the simultaneous service of one individual on all three boards.
The constitutional dual office-holding prohibition is contained in Article II, section 5(a) of the Florida Constitution, and provides in part:
"No person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein, except that a notary public or military officer may hold another office, and any officer may be a member of a constitution revision commission, taxation and budget reform commission, constitutional convention, or statutory body having only advisory powers."
In the absence of any definition of the term "office" or "officer" for purposes of the constitutional dual office-holding prohibition, the issue becomes whether a particular position constitutes an "office" or is instead an "employment." Employment does not subject the holder of the position to dual office-holding considerations since the courts have determined that employment does not involve the delegation of any of the sovereign power of the state.[1] The Florida Supreme Court has stated that a person in the service of the government, who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government and not by contract, consisting of the exercise of important public powers, trusts, or duties, as part of the regular administration of the government is a public officer.[2] Every "office," as that term is used in the constitution, implies an authority to exercise some portion of the sovereign power, either in making, executing, or administering the laws.[3] Thus, it is the delegation of any part of the authority of the sovereign that distinguishes an officer from an employee.
Resolution of your questions requires a determination of whether members of the Orange County Code Enforcement Board, the Orange County Housing Finance Authority Board and the City of Orlando Downtown Development Board are officers within the scope of the constitutional dual office-holding prohibition.
Code Enforcement Board
According to your letter, the Orange County Code Enforcement Board (the "Code Enforcement Board") was created by the county pursuant to Chapter 162, Florida Statutes, and is a quasi-judicial board with the authority to hear alleged violations of the county code, issue fines, and impose liens on real and personal property. Decisions of the board are final and may only be challenged by an action in circuit court. Members of the code enforcement board are appointed by the Orange County Board of County Commissioners and serve a three-year term.
Chapter 162, Florida Statutes, is the "Local Government Code Enforcement Boards Act."[4] The legislative intent for adopting the act is expressed in section 162.02, Florida Statutes:
"It is the intent of this part to promote, protect, and improve the health, safety, and welfare of the citizens of the counties and municipalities of this state by authorizing the creation of administrative boards with authority to impose administrative fines and other noncriminal penalties to provide an equitable, expeditious, effective, and inexpensive method of enforcing any codes and ordinances in force in counties and municipalities, where a pending or repeated violation continues to exist." Counties and municipalities may create local government code enforcement boards by ordinance as provided in Chapter 162, Florida Statutes.[5] This ordinance may give code enforcement boards "the authority to hold hearings and assess fines against violators of the respective county or municipal codes and ordinances."[6]
Pursuant to section 162.08, Florida Statutes, each code enforcement board has the power to:
 "(1) Adopt rules for the conduct of its hearings.
 (2) Subpoena alleged violators and witnesses to its hearings. Subpoenas may be served by the sheriff of the county or police department of the municipality.
 (3) Subpoena evidence to its hearings.
 (4) Take testimony under oath.
 (5) Issue orders having the force of law to command whatever steps are necessary to bring a violation into compliance."
Thus, the powers and duties of code enforcement boards are quasi-judicial in nature. Appeals from a final order of a code enforcement board are limited to appellate review of the record rather than a hearing de novo. Such appeals are within the jurisdiction of the circuit court.[7]
This office has issued several opinions concluding that code enforcement board members are officers for purposes of the dual office-holding prohibition. In Attorney General Opinion 81-61, this office considered the duties and responsibilities of a code enforcement board member under Chapter 162, Florida Statutes, [8] and, based on the powers set forth in the statutes, determined that board members are officers for purposes of Article II, section 5(a), Florida Constitution. The issue was considered subsequently and Attorney General Opinion 97-37 affirmed the earlier determination that code enforcement board members are officers for purposes of the prohibition on dual office-holding.[9]
Thus, it is my opinion, based on the duties and responsibilities exercised by code enforcement board members, that members of the Orange County Code Enforcement Board are officers for purposes of the dual office-holding prohibition contained in Article II, section 5(a) of the Florida Constitution.
Housing Finance Authority
The Orange County Housing Finance Authority was established by county ordinance in 1978 pursuant to Chapter 78-89, Laws of Florida. Chapter 78-89, Laws of Florida, was numbered Part IV, Chapter 159, Florida Statutes, and has been titled the "Florida Housing Finance Authority Law."[10]
The Florida Housing Finance Authority Law authorizes
"[e]ach county in this state [to] create by ordinance a separate public body corporate and politic, to be known as the "Housing Finance Authority" of the county for which it is created, to carry out only the powers granted in this act."[11]
The Legislature enacted the law to address a shortage of affordable housing within Florida and determined that "[s]uch shortage cannot be relieved except through the encouragement of investment by private enterprise and the stimulation of construction and rehabilitation of housing[.]"[12] Further, the Legislature determined:
"The financing, acquisition, construction, reconstruction, and rehabilitation of housing and of the real and personal property and other facilities necessary, incidental, and appurtenant thereto are exclusively public uses and purposes for which public money may be spent, advanced, loaned, or granted and are governmental functions of public concern."[13]
Members of the housing finance authority are appointed by the governing body of the county and serve a four-year term of office. Members receive no compensation for their service, but are entitled to necessary expenses, including travel expenses, that may be incurred in the discharge of their duties.
Among the powers of each housing finance authority is the power to "create or assist in creating corporations that qualify as not-for-profit corporations under s. 501(c)(3) of the Internal Revenue Code of 1986, as amended, and under the laws of this state, and that are engaged in acquiring, constructing, reconstructing, or rehabilitating qualifying housing developments."[14] The authority itself is legislatively declared to "constitute a public body corporate and politic, exercising the public and essential governmental functions" described in the act.[15] The authority can sue and be sued;[16] own real and personal property;[17]
borrow money through the issuance of bonds;[18] and purchase or make loans and take assignments of mortgage loans and promissory notes.[19] County housing authorities can also "own, maintain, operate, control, and capitalize a limited-purpose savings and loan association to provide low-cost loans and related services to eligible persons to obtain affordable housing; "[20] and make loans or grant surplus funds of the authority to corporations that qualify as not-for-profit corporations to support the development of affordable housing.[21] Authorities are authorized to issue revenue bonds and may issue refunding bonds to pay, retire, or refund the bonds issued by another housing finance authority.[22]
Based on the substantial powers and duties imposed on county housing finance authorities set forth in Part IV, Chapter 159, Florida Statutes, it is my opinion that a member of the Orange County Housing Finance Authority Board is an officer for purposes of Florida's dual office-holding prohibition.
Downtown Development Board
You advise that the City of Orlando Downtown Development Board was created pursuant to Chapter 71-810, Laws of Florida, as amended by Chapter 78-577, Laws of Florida, and implemented by Orange County Ordinance No. 78-18. The board was established upon approval by a freeholder election within the development area.[23]
According to the statement of policy and legislative findings in the act:
"It is the policy of the state to make it possible for the city to revitalize and preserve property values and prevent future and reduce present deterioration in the Orlando central city neighborhood development area. The board hereby created is intended to provide a vehicle whereby property owners of commercial and income-producing properties who will benefit directly from the results of such a program will bear the substantial cost thereof and thereby local problems may be solved on the local level through the use of machinery provided by local government."[24]
Originally entitled the "Orlando central city neighborhood Development Board," the board was renamed the "Downtown Development Board" in 1978.[25] The Downtown Development Board is composed of five members and is "constituted a body corporate and an agency of the city[.]" Performance by the board of its duties and the exercise of its powers are legislatively designated a municipal function.[26] Members of the board are appointed by the mayor with the concurrence of the city council for a three-year term.[27]
Removal is by majority vote of the entire city council.[28]
Members of the board serve without compensation but may be reimbursed by the board for necessary and reasonable expenses actually incurred in performing their duties.[29]
Among the powers granted to the board are the powers: to own, convey, and dispose of district property and facilities;[30] to receive the proceeds of any tax imposed pursuant to Chapter 71-810, Laws of Florida;[31] to enter into agreements with other governmental agencies or public bodies;[32] to request that the city exercise its powers of eminent domain to acquire real property for the purposes of the district;[33] to issue and sell revenue certificates;[34] to fix, regulate, and collect rents, fees, rates, and charges for district facilities or projects;[35] and to borrow money on its unsecured notes.[36]
The Orlando downtown development area is designated a special taxing district by Chapter 71-810, Laws of Florida.[37] An ad valorem tax may be levied by the city council upon the request of the board for the purpose of financing the operation of the board. Any tax levy imposed within the district shall not be construed as part of the ten mill constitutional limitation imposed on municipal ad valorem taxes.[38]
The constitutional dual office-holding prohibition refers only to state, county, and municipal offices; there is no reference to special district offices. Both the courts and this office have therefore concluded that the dual office-holding prohibition does not apply to the officers of an independent special district. In Advisory Opinion to the Governor — DualOffice-Holding, [39] the Supreme Court of Florida reiterated that special district officers are not included within the dual office-holding prohibition, concluding that a member of a community college district board of trustees is not included within the dual office-holding prohibition. Thus, for example, this office in Attorney General Opinion 94-83 stated that membership on the Panama City-Bay County Airport Authority, created as a independent special district, did not constitute an office for purposes of Article II, section 5(a), Florida Constitution. The authority was created by law to perform a limited function, its members were appointed by a diverse group of governmental agencies that had no oversight or control over the functions or actions of the authority.[40]
This office has cautioned however, that care must be taken in determining the nature and character of a district or authority to determine whether the governmental entity is an agency of government such that its officers may be considered state, county, or municipal officers for purposes of the dual office-holding prohibition. For example, in Attorney General Opinion 84-90, this office considered whether a member of the Volusia County Health Facilities Authority was a county officer. While the authority was created and organized pursuant to Part III, Chapter 154, Florida Statutes, as a public body corporate and politic, it was created by the county by ordinance or resolution. The governing body of the county appointed the authority board members, was charged with removal of board members, and was authorized to abolish the authority at any time. This office concluded that the authority was an instrumentality of the county and its officers were county officers. Thus, the constitutional prohibition against dual office-holding prohibited the mayor from also serving on the governing body of the county health facilities authority.
Subsequently, in Attorney General Opinion 2008-61, the question presented was whether a member of the Volusia Growth Management Commission was an officer for purposes of Article II, section 5(a) of the Florida Constitution. The commission was created by the county charter to determine the consistency of comprehensive plan amendments with current comprehensive plans of the county itself and the municipalities within Volusia County. The commission was composed of members appointed by the municipalities and the county as well as nonvoting members appointed by the school board, the St. Johns River Water Management District, and the Volusia County Business Development Corporation. Compliance with the council's requirements was made a mandatory prerequisite for amending a comprehensive plan. The council was responsible for issuing consistency certificates for developments and the council's determinations were binding on the submitting government. Thus, the opinion concluded that the actions taken by the council were an exercise of the sovereign powers of the state and membership on the council would be an office.
The Downtown Development Board has been designated a dependent special district.[41] The municipality appoints all members of the board and the authority was created by approval in a local freeholder election. The powers and duties of the board are prescribed by local ordinance (the special act adopted as a code provision). The budget for the authority is approved by the city[42] and funded with ad valorem taxes requested by the board and approved and levied by the city.[43] Thus, as a dependent special district of the municipality, created by a municipal ordinance with its budget approved and funded by the municipality, the Downtown Development Board would appear to be a part of municipal government and its members would appear to be municipal officers subject to the dual office-holding prohibition.
In sum, it is my opinion that board members who serve on the Orange County Code Enforcement Board, the Orange County Housing Finance Authority Board, and the City of Orlando Downtown Development Board are officers for purposes of the dual office-holding prohibition in Article II, section 5(a), Florida Constitution.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] See State ex rel. Holloway v. Sheats,83 So. 508 (Fla. 1919) ("An employment does not authorize the exercise in one's own right of any sovereign power or any prescribed independent authority of a governmental nature; and this constitutes perhaps the most decisive difference between an employment and an office, and between an employee and an officer."). Andsee, e.g., Ops. Att'y Gen. Fla. 96-91 (1996) (special master of county value adjustment board an officer); 84-93 (1984) (legal counsel to local government code enforcement board an employee); and 73-332 (1973) (attorney for county commission an employee).
[2] State ex rel. Clyatt v. Hocker,22 So. 721 (Fla. 1897).
[3] Id.
[4] See s. 162.01, Fla. Stat., for the short title for the act.
[5] Section 162.03(1), Fla. Stat. And see Ch. 11, Art. II, Orange County Code of Ordinances, for the local legislation relating to the Orange County Code Enforcement Board.
[6] Section 162.03(2), Fla. Stat.
[7] See s. 162.11, Fla. Stat.
[8] The statutory language referred to was contained in s. 166.058, Fla. Stat. (1981), at the time the opinion was rendered. The statute was subsequently renumbered and the relevant language is now contained in s. 162.08, Fla. Stat. See s. 7, Ch. 82-37, Laws of Fla.
[9] And see Op. Att'y Gen. Fla. 01-28 (2001).
[10] See s. 159.601, Florida Statutes, providing the title for the act, and Orange County Ordinance No. 78-18.
[11] Section 159.604(1), Fla. Stat.
[12] Section 159.602(1) and (2), Fla. Stat.
[13] Section 159.602(3), Fla. Stat.
[14] Section 159.605(2)(b)4., Fla. Stat.
[15] Section 159.608, Fla. Stat.
[16] Section 159.608(1), Fla. Stat.
[17] Id. at (2).
[18] Section 159.608(4), Fla. Stat.
[19] Section 159.608(3), Fla. Stat. And see Ops. Att'y Gen. Fla. 09-17 (2009) (Housing Finance Authority of Palm Beach County may loan funds to for-profit developers for development of qualifying housing or construction, purchase, reconstruction, or rehabilitation of qualifying housing under provisions of Part IV, Chapter 159, Florida Statutes, if such housing fulfills purposes of the act); and 00-14 (2000) (Housing Finance Authority of St. Johns County authorized by section 159.608(3), Florida Statutes, to make mortgage loans to individuals for purchase of qualifying housing developments, such as a small apartment complex to be rented to low-income families or individuals).
[20] Section 159.608(9), Fla. Stat. But see Op. Att'y Gen. Fla. 90-64(1990) (housing authorities created pursuant to Ch. 159, F.S., not authorized to establish, wholly own and operate state-chartered savings bank).
[21] Section 159.608(10)(a), Fla. Stat.
[22] Section 159.612(1), Fla. Stat. And see Op. Att'y Gen. Fla. 96-73 (1996) (Housing Finance Authority of Monroe County is an agency or subdivision of state and, as agency that may employ professional service consultants, it falls within scope of Consultants' Competitive Negotiation Act and must follow requirements of that act when developing real property; further, authority must comply with section 255.20, Florida Statutes, in those cases where authority owns the public building, structure, or other public construction work).
[23] See s. 13, Ch. 71-810, Laws of Fla.
[24] Section 3, Ch. 71-810, Laws of Fla.
[25] See s. 1, Ch. 78-577, Laws of Fla.
[26] Section 5, id.
[27] Section 5(1) and (2), supra at n. 24.
[28] Section 5(2), supra at n. 24.
[29] Section 5(5), supra at n. 24.
[30] Section 8(3), supra at n. 24.
[31] Section 8(5), supra at n. 24.
[32] Section 8, supra at n. 24.
[33] Section 8(10), supra at n. 24.
[34] Section 8(11), supra at n. 24.
[35] Section 8(12), supra n. 24.
[36] Section 8(13), supra at n. 24.
[37] Section 9, supra n. 24.
[38] See Art. VII, s. 9, Fla. Const.
[39] 630 So. 2d 1055, 1058 (Fla. 1994).
[40] And see Ops. Att'y Gen. Fla. 71-324 (1971) (member of hospital district's governing body not an officer within constitutional dual office-holding prohibition); 73-47 (1973) (trustee of junior college district may serve as member of parks, planning, and zoning commission), 75-153 (1975) and 80-16 (1980) (legislator may serve as a member of a community college district board of trustees); 78-74 (1978) (municipal parking board member may serve as member of community college district board of trustees); 85-24 (1985) (mayor may serve on a community redevelopment district established by general law); 86-55 (1986) (member of Big Cypress Basin's governing board may serve as city mayor); 94-42 (1994) (city commissioner may serve on a local multi-agency career service authority); 94-83 (1994) (person may serve on airport authority and on school board); 96-84 (1996) (city commissioner may also serve on area housing commission); 01-14 (2001) and 02-83 (2002) (water control district commissioner may serve as city commissioner); 02-22 (2002) and 00-17 (2000) (dual office-holding prohibition inapplicable to positions in independent fire protection district).
[41] See http://www.floridaspecialdistricts.org/.
[42] Section 6, Ch. 71-810, Laws of Fla.
[43] Section 9, id.